IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| IN RE: JAMAL SHARIF ROBINSON, | ) ) | |
| Debtor | ) ) ) ) | CASE NO. 07-70085-WSR-13 CHAPTER 13 |

MEMORANDUM DECISION

The matter before the Court is the Debtor's "Application To Quash Non-Revokable Wage Assignment Against Co-Debtor" and the objection to such motion by the City of Roanoke, the beneficiary of such assignment. The assignment in question was executed by the Debtor's non-filing spouse, Rhonda S. Goddard, on December 14, 2006 in which she assigned to the City of Roanoke $100 of her wages from her employment with AAAA Management Group out of every two week pay period until delinquent real estate taxes in the amount of $662.35 plus interest owed to the City were paid in full. The taxes in question appear to relate to residential property owned by the Debtor and Ms. Goddard and which Schedule A of the petition represents is owned by them as tenants by the entirety. Schedules I and J of the petition include the income and household expenses of the Debtor and his non-filing spouse and list a total property tax expenditure per month of $110.08, composed of $6.65 for personal property tax on an automobile and $103.43 for real estate tax. Ms. Goddard did not join in the Debtor's petition and has not participated in any manner in this case. In fact, she was not even listed as a co-debtor in Schedule H nor included in the case mailing matrix, and it is unclear whether or not she was served with any notice of the Application. She is not included in counsel's certificate of service of his notice of hearing on the Application. At the hearing on the Application held on February 26, 2007, counsel for the City of Roanoke appeared and objected

to it being granted. He cited a decision from the Bankruptcy Court for the Eastern District of Virginia, *In re Stovall*, 209 B.R. 849 (Bankr. E.D. Va. 1997), Counsel for the Debtor on March 7 submitted written argument in support of the Application and has urged the Court not to follow *Stovall*, which held that personal property tax assessed against an automobile which had been acquired for personal or household purposes was not a "consumer debt" within the chapter 13 co-debtor stay provision contained in 11 U.S.C. § 1301(a). The dispute is ripe for decision.

The Debtor has filed a Chapter 13 Plan which provides for a claim in the amount of $1,300 to the treasurer of the City of Roanoke upon real property located at 3027 Maplelawn Avenue to be paid with interest at the rate of 9% per annum in 31 monthly installments of $47.16 each. The Court does not have sufficient information before it to permit it to reconcile the provisions relating to the amount of tax debt ($662.35) and payment schedule ($100 every 2 weeks) contained in the wage assignment with the information contained in the schedules filed with the petition, except that date of calculation of the real estate tax delinquency noted in the assignment (October 6, 2006) is of course earlier than the date the schedules were signed, which is indicated to have been January 17, 2007.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The Court concludes that a dispute relating to the extent and applicability of the co-debtor stay imposed by 11 U.S.C. § 1301(a) is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and (O).

In *Stovall* Judge Mitchell reviewed the case authority on the question of whether tax obligations are consumer debts within the meaning of 11 U.S.C. § 1301(a). Most of these

decisions are income tax cases and the overwhelming weight of authority, as discussed in Judge Mitchell's opinion, is that § 1301 is aimed at consumer debts incurred in the acquisition of consumer goods and not tax obligations which are assessed and imposed by governmental authorities for a public purpose. This opinion will simply refer to that discussion and those citations rather than attempting to replicate them here. See 209 B.R. at 853-54. Although allowing that the question was "close", *Id.,* Judge Mitchell applied the logic of that weight of authority to the specific issue of personal property taxes assessed on the debtor's vehicle, which was one assumed to be used for personal rather than business purposes, and held that §1301(a) did not prohibit tax collection activity against a non-filing co-debtor. Although the rationale of *Stovall* has been criticized, most notably by Judge Lundin in his treatise on chapter 13 bankruptcy, see Keith M. Lundin, 1 Chapter 13 Bankruptcy, 3d Edition § 85.2 at p. 85-5 (2000 and Supp. 2006), it cannot be disputed that there is a much greater consensus of the decided cases on the issue of tax obligations in general than is true with many, probably most, disputed bankruptcy issues. Moreover, since Judge Mitchell's decision in 1997, a decision in 2000 of the Sixth Circuit Court of Appeals, the only discovered Court of Appeals's decision addressing the issue, held that federal income and self-employment taxes are not consumer debts for the purpose of the § 1301(a) co-debtor stay. *IRS v. Westberry (In re Westberry)*, 215 F.3d 589 (6th Cir. 2000).

While this Court does acknowledge that it does seem somewhat strange to treat the mortgage loan to acquire a residence as consumer debt, but not the real estates taxes incurred by reason of ownership of that same residence, it concludes that when the correct answer to the issue presented is not plain, following the previously mentioned strong weight of authority, including specifically the decision of this Court's sister Court in the Eastern District of Virginia,

is the proper course to take.  The Court is reassured in its decision by the fact that the acknowledged intent of Congress in adopting § 1301(a) was to protect chapter 13 debtors from creditor pressure after a bankruptcy filing being applied to non-filing related party co-debtors, often parents, which would otherwise empower consumer debt creditors to accomplish indirectly what the automatic stay imposed by § 362 would prohibit their doing directly.  See 8 Collier on Bankruptcy ¶ 1301.01 at p. 1301-3 (Lawrence P. King, ed., 15th ed. rev., 2006).  It seems highly doubtful that Congress had in mind shielding non-filing tax debtors from answering their own enforceable tax obligations by virtue of the happenstance of a bankruptcy filing by a party jointly liable for any such obligation, when it enacted the co-debtor stay of § 1301(a).

There is a second reason why this Court concludes that the Application ought to be denied.  Section 1301(a) provides that "after the order for relief under this chapter, a creditor **may not act, or commence or continue any civil action**, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor . . . ." (emphasis added)   It is clear that the continuation of the wage assignment effected by agreement between the City and Ms. Goddard is not the commencement or continuation of a "civil action" by the City.  The question becomes, therefore, whether the City's failure to terminate a wage assignment already in place prior to bankruptcy and its acceptance and application of payments received from the employer to the tax debt after bankruptcy  can be considered an "act" by the City "after the order for relief".  While the Court acknowledges that the word "act" has been liberally construed to include even a notation on the credit record of the non-filing co-debtor*, see In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991); *Singley v. American Gen. Fin. (In re Singley)*, 233 B.R. 170 (Bankr. S.D. Ga. 1999), it concludes that the language chosen by Congress evinces an intent to prohibit a consumer debt creditor from taking **some new action** of

a non-judicial nature, or to commence or continue the use of legal process, after the bankruptcy filing, against a non-filing co-debtor to collect the debt even though the bankruptcy debtor is making provision to pay the joint debt in his or her chapter 13 plan. In *Sommersdorf*, for example, the creditor had taken after bankruptcy an action adverse to the credit standing of the non-filing co-debtor, an "act" which could be reasonably expected to bring pressure to bear against that co-debtor and indirectly against the filing debtor.  It has been correctly noted that the scope fo the co-debtor stay established by § 1301(a) is more circumscribed than the broader language which defines the automatic stay imposed by § 362.  *See* Lundin, Chapter 13 Bankruptcy, *supra,* § 84.1 at p. 84-2.  The Court concludes that simply allowing a voluntary agreement put into effect before bankruptcy with a non-filing co-debtor, the effectiveness of which does not involve the commencement or continuation of legal process, to remain in effect post-filing, that is to say, continuing the status quo, is not an affirmative "act" by the creditor which infringes the co-debtor stay of section 1301(a), even if the real estate tax debt in issue here were determined to be a consumer debt subject to such provision.  In doing so the Court notes that if Ms. Goddard had felt it important to escape the consequences of the voluntary agreement she entered into with the City of Roanoke, she certainly could have joined her husband in a joint chapter 13 petition.  For all the Court knows, she may be perfectly satisfied with the continuation of the assignment she agreed to, which according to its terms would seem to be very close at this point to satisfaction according to its terms, and actually might oppose and resent her husband's efforts to void it.  If that not be the case, however, she is certainly free to file her own petition in this Court and obtain the benefit of the automatic stay under section 362 of the Bankruptcy Code as to the continued effectiveness of her wage assignment.

CONCLUSION

For the reasons noted above, the Court by a separate order will deny the Debtor's motion styled "Application To Quash Non-Revokable Wage Assignment Against Co-Debtor".

This 9th day of March, 2007.

*/s/ William F. Stone, Jr.*
_____
UNITED STATES BANKRUPTCY JUDGE